HOMEZELL CHAMBERS et al.,
Plaintiffs,

v.

The UNITED STATES, Defendant.

Civ. A. No. 4106.

United States District Court
E. D. Virginia,
Alexandria Division.

Nov. 21, 1969.

Allan L. Kamerow, Alexandria, Va., for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., C. Vernon Spratley, Jr., U. S. Atty., Alexandria, Va., David J. Anderson and Harland F. Leathers, Dept. of Justice, Washington, D. C., for defendant.

## ORDER AND MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

This suit was brought on behalf of those overseas teachers whose rights were not adjudged in Crawford v. United States, 376 F.2d 266, 179 Ct.Cl. 128 (1967), cert. den. 389 U.S. 1041, 88 S.Ct. 781, 19 L.Ed.2d 831 (1968), seeking here the back pay denied their colleagues in the Crawford case.

The teachers make substantially the same arguments here that their colleagues made in the Court of Claims— They claim their basic compensation as fixed by the Overseas Teachers Pay and Personnel Practices Act of 1959, 73 Stat. 213—Public Law 86–91—should equal that received by teachers in the United States school jurisdictions of over one hundred thousand population— that they were paid less—therefore the Government should be required to now pay them the difference between what they received and what they were entitled to receive.

The Secretary says the Act nowhere requires such mandatory result but, instead, left the precise salary to the Department of Defense.

The material facts are not in dispute —They were stipulated and need not here be recited in full—Suffice it to state, prior to 1959 overseas teachers working for the Department of Defense were governed by the Classification Act of 1949, 5 U.S.C. § 1071 et seq. and the Annual and Sick Leave Act of 1951, 5 U. S.C. § 2061, et seq. Then the teachers could be paid only the proportionate amount of the specified amount of salary for their grade. They could not be paid during the summer vacation or during the usual Christmas, Easter and Thanksgiving recesses unless they had annual leave available; and if they were placed in a leave-without-pay status their overseas differentials and allowances were discontinued.

To overcome these problems, the Overseas Teachers Pay and Personnel Practices Act was proposed. It became law on July 17, 1959. The Act exempted overseas teachers from coverage under the Classification and Annual and Sick Leave Acts. It did not purport to establish the overseas dependents' school system other than on an annual basis, as was then the practice. It delegated to the Secretary of Defense authority to issue regulations necessary to carry out the purposes of the Act.

Both parties filed motions for summary judgment.

Upon consideration of the briefs and authorities cited therein and the oral argument of counsel, the Court is of the opinion that the defendant's motion for summary judgment ought to be granted and the plaintiffs' motion for summary judgment ought to be denied, and

It Is So Ordered.

The pertinent portion of the statutes involved provides:

5 U.S.C. § 2352—

"(a) Not later than the nineteeth day following July 17, 1959, the Secretary of Defense shall prescribe and issue regulations to carry out the purposes of this chapter. Such regulations shall govern—

\*    \*    \*    \*    \*    \*

(2) the fixing of the rates of basic compensation for teaching positions in relation to the rates of basic compensation for similar positions in the United States."

5 U.S.C. § 2353—

"(c) The Secretary of each military department shall fix the rates of basic compensation of teachers and teaching positions in his military department in relation to the rates of basic compensation for similar positions in the United States but no such rate of basic compensation so fixed shall exceed the highest rate of basic compensation for similar positions of a comparable level of duties and responsibilities under the municipal government of the District of Columbia."

The Overseas Dependents' School System is not a continuing program. It is provided for on a yearly basis—Expenditures of the annual appropriated

funds are limited to x-dollars per student, loosely referred to as the per pupil limitation.

The Secretary has always fixed the overseas teachers' salaries together with the other expenses incident to the operation of the overseas school system so as to keep the overall costs within the per pupil limitation as set forth in the annual Appropriations Act. This fact was made known to the Congress when the Secretary submitted his annual request for funds, yet only for the fiscal year 1960–1961 did the Congress appropriate sufficient moneys to permit fixing teachers' salaries at levels equal to those in the United States school districts with over one hundred thousand population after all other items chargeable to the per pupil limitation were taken care of.

Upon substantially the same record as here made, the United States Court of Claims held that overseas teachers were not entitled to recover their claimed back pay (Crawford v. United States, 376 F.2d 266, 179 Ct.Cl. 128 (1967).) Judge Skelton, speaking for the majority, said that overseas teachers' salaries were keyed to the per pupil limitation contained in the Appropriations Act and were to be fixed within such limitation in the discretion of the Secretary of Defense.

As suggested by the teachers, this Court has read and reread both the majority and dissenting opinions in Crawford, as well as the briefs and citations of counsel in the present case, and elects to follow the majority opinion.

Judge Nichols, speaking for the minority, did not go along with the teachers and read "in relation to," as used in the statute (5 U.S.C. § 2353(c)), to mean "equal to"—He construed the phrase as requiring the Secretary to ascertain stateside salaries and, in light of his finding, fix compensation that was at least comparable.

With all due respect to the minority opinion, that is but another way of say-

ing § 2353(c) of the statute fixed the annual salary of overseas teachers regardless of the per pupil limitation set by the annual congressional appropriation. The minority in Crawford seems to hold the Secretary fixed the teachers' salary, then cut it.

The record here made is to the contrary. The Secretary issued regulations calling for an annual salary review with a comparison of compensation paid in school jurisdictions of one hundred thousand population and over—subject to the per pupil limitation.

The educational associations were so advised. They in turn told the Appropriations Committee the per pupil limitation limited salaries. It limits the amount of money which may be spent for textbooks, library books and tuition, but since most of the money appropriated goes into salaries, it is salaries which are in turn most limited.

The salaries listed by the Secretary for budgeting purposes were tentative at best—subject to being adjusted, if necessary, to keep within the per pupil limitation as fixed by the Congress. The Secretary has so interpreted the statutes in question since their adoption. The interested educational association, to say the least, acquiesced.

The teachers suggest that the 1966 amendment requiring that the Secretary fix basic teacher salaries at rates equal to the average of the range of rates paid teachers of a comparable level in urban jurisdictions in the United States with populations in excess of one hundred thousand is indicative of what the Secretary should have done in administering Public Law 86–91. Such is not the law. The views of a subsequent Congress do not provide any basis for inferring the intent of an earlier one. See United States v. Price, 361 U.S. 304, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960), and United States v. Philadelphia National Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963).

The teachers' contention that the Secretary could have fixed their salaries

equal to those paid comparable teachers in the District of Columbia and still stayed within the per pupil limitation as fixed by the Congress by decreasing the amount spent for desks, books, supplies, and so forth, or by cutting the administration costs or by increasing the class sizes—may or may not be true. That is not the question here to be determined. The Congress fixed the total amount that could be spent for the operation of the overseas dependents' school system each year. The allocation of the amount to be paid teachers and for the other necessary expenses was left to the sound discretion of the Secretary of Defense. The Court of Claims has so found, and this Court now so finds.

The fact that tuition fees paid in the Canal Zone are higher than the per pupil limitation does not alter the decision here made. These tuition fees had to be paid by the Government because the applicable law (68 Stat. 335) required full reimbursement to the Canal Zone government for education provided to overseas dependents. The per pupil limitation is only an average amount that can be spent for each pupil—not a limitation applicable to every area or school.

The Clerk will send copies of this order and memorandum opinion to all counsel of record.